IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CR-10-235-D |
| TRINA TAHIR, | ) ) ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court are Defendant Trina Tahir's Motion for Withdrawal of Guilty Plea [Doc. No. 201], filed November 15, 2011, and Supplement to Her Prior Motion for Withdrawal of Guilty Plea [Doc. No. 271], filed July 3, 2013. The government has timely opposed the Motions, and Defendant has filed a reply brief. In the interim between Defendant's Motion and Supplemental Motion, the Court conducted a mental competency proceeding initiated by Defendant pursuant to 18 U.S.C. § 4241, and made a judicial determination of Defendant's competency in a written decision issued on April 11, 2013. The remaining issues raised by Defendant's Motions were the subject of an evidentiary hearing held on November 21, 2013. After careful consideration, the Court finds the Motions should be denied, for the reasons set forth herein.

**Factual and Procedural Background**

Defendant Trina Tahir pled guilty on April 6, 2011, to Count 12 of the Indictment, which charges a money laundering offense under 18 U.S.C. § 1956(a)(1)(B)(i), that is, engaging in a financial transaction with proceeds of illegal activity. The plea agreement negotiated by retained defense counsel, Stephen Jones and April Davis, provides for the government to dismiss other charges in the Indictment at sentencing: Count 1, conspiracy to commit wire fraud in violation of

18 U.S.C. § 1349; Counts 2, 6, 10 and 13, four instances of wire fraud in violation of 18 U.S.C. § 1343; and Counts 3, 7 and 14, three additional instances of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). All charges arise from a mortgage fraud scheme carried out through Defendant's real estate agency, T&T Realty, by named and unnamed conspirators. At relevant times, Defendant was a licenced real estate broker; co-defendant Michael Gipson was a real estate agent employed by T&T Realty; and co-defendant Derrick Reuben Smith was a real estate investor and proprietor of Mortgage Processing Service or MP Services.

On February 24, 2011, Mr. Gipson entered into a plea agreement with the government. The agreement was filed in open court on March 30, 2011, during a hearing on Mr. Gipson's petition to enter a guilty plea; the Court accepted his plea of guilty to conspiracy as charged in Count 1 and wire fraud as charged in Count 8. On April 1, 2011, Mrs. Tahir signed a plea agreement and completed her plea petition, discussed *infra*, which was accepted by the Court at a hearing on April 6, 2011. Mr. Smith proceeded to a jury trial on April 11, 2011, and was found guilty of conspiracy on April 14, 2011. The jury could not reach a verdict on charges of wire fraud and money laundering against Mr. Smith (Counts 2, 5, 6 and 9), and those charges were later dismissed without prejudice. On August 30, 2011, Mr. Smith was sentenced to a 40-month term of imprisonment to be followed by two years of supervised release, and was ordered to pay restitution in the amount of $369,355.54.[1] Mr. Gipson was sentenced on October 26, 2011, to concurrent four-month terms of imprisonment to be followed by concurrent three-year terms of supervised release, and was ordered to pay restitution in the amount of $335,070.55.

---

[1] Mr. Smith's conviction and sentence were affirmed on direct appeal. *See United States v. Smith*, 705 F.3d 1268 (10th Cir. 2013).

Defendant's initial presentence investigation report was disclosed on July 28, 2011, and reflected an advisory guideline range for imprisonment of 41 to 51 months. The final presentence report was completed on October 18, 2011. Although Defendant, through counsel, made numerous objections to the report resulting in some changes, the advisory guideline range remained the same. On November 15, 2011, Defendant first moved to withdraw her guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(B). The Motion was supported by affidavits of Defendant and her counsel, Mr. Jones, and medical records filed under seal. It alleged that Defendant's guilty plea was not knowing and voluntary because, unknown to counsel, Defendant was over-medicating herself with prescription drugs for anxiety and depression when she entered the plea.

The Motion also raised a concern that "something else" beyond Mr. Jones' expertise was impairing Defendant's mental functioning. *See* Jones Aff. [Doc. No. 201-3], ¶ 7. Immediately before a hearing on the Motion, Defendant requested a judicial determination of mental competency, and triggered what became a lengthy process of outpatient and inpatient evaluations that need not be recounted here. A competency hearing was held March 28, 2013, and the Court issued its findings on April 11, 2013, that Defendant is not presently suffering from a mental disease or defect that renders her mentally incompetent to the extent she is unable to understand the nature and consequences of this criminal proceeding or assist in her defense, nor was she suffering from such a disease or defect on April 6, 2011, when she entered her guilty plea. *See* Memorandum of Decision [Doc. No. 257] (filed under seal).

After the competency decision was made, Defendant discharged her attorneys, Mr. Jones and Ms. Davis. She then retained new counsel, Bill Zuhdi, and requested permission to amend her original Motion. Defendant subsequently filed the Supplemental Motion, asserting claims of coercion by Mr. Jones and Ms. Davis and ineffective assistance of counsel. The Supplemental

3

Motion alleges that Defendant's guilty plea was coerced by conduct of Ms. Davis during a meeting to complete the plea paperwork on April 1, 2011, and by promises of counsel regarding a likely sentence and the government's case.

The Supplemental Motion is supported by the affidavits of Defendant, daughter Niah Spriggs, and husband Ali Tahir. Defendant and her daughter allege that Ms. Davis promised Defendant "no more than 6 months" in custody and, perhaps, "house arrest or 30 days." *See* Trina Tahir Aff. [Doc. No. 271-1] ¶ 1; Spriggs Aff. [Doc. No. 271-2] ¶¶ 4, 6. According to Mr. Tahir, Ms. Davis said Defendant "would get 30 days or less home confinement or paper time." *See* Ali Tahir Aff. [Doc. No. 271-3] ¶ 4. Defendant also alleges Ms. Davis made a promise regarding restitution, that is, "all I would have to pay back is $8,000." *See* Trina Tahir Aff. [Doc. No. 271-1] ¶ 1. Ms. Spriggs alleges that Ms. Davis promised Defendant could get a reduced sentence by cooperating with the government and testifying against others, including Aaron Dodson (a home builder allegedly involved in the mortgage fraud scheme), Mr. Gipson, and Adia Powell (another real estate agent). *See* Spriggs Aff. [Doc. No. 271-2] ¶ 5. Mr. Tahir alleges Ms. Davis said "all [Defendant] had to do was testify against Aaron Dodson the builder." *See* Ali Tahir Aff. [Doc. No. 271-3] ¶ 4. Defendant also alleges she is innocent of all charges because, in her words, "I was not aware the acts I did were illegal." *See* Trina Tahir Aff. [Doc. No. 271-1] ¶ 3.

In opposition to the Motions, the government contends Defendant has not provided a sufficient reason to withdraw her guilty plea. The government argues that Defendant's assertions of drug-induced mental impairment, ineffective legal assistance, and innocence are conclusory, that Defendant's current allegations of coercion are untrue, and that all of the allegations are refuted by her plea petition and testimony under oath during the change-of-plea hearing. The government's

4

response to the Supplemental Motion is supported by an affidavit of Ms. Davis and copies of communications between Defendant and counsel pertinent to her allegations against them.

At the November 21, 2013 hearing on the Motions, Defendant appeared personally and through retained counsel, Mr. Zuhdi. The government appeared through Assistant United States Attorneys Scott Williams and Chris Stephens, and case agents, FBI Special Agent Tim Schimtz and IRS Special Agent David Mangan. The Court heard the testimony of witnesses: Niah Spriggs; April Davis; and Stephen Jones. The Court also admitted documentary evidence offered by the parties, and heard brief oral arguments of counsel.

**Standard of Decision**

"A defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts a plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Under this rule, "the defendant has the burden of establishing a 'fair and just' reason for allowing withdrawal of the plea, and '[i]t is within the sound discretion of the [district] court to determine what circumstances justify granting such a motion.'" *United States v. Guthrie*, 64 F.3d 1510, 1513 (10th Cir. 1995) (quoting *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993); internal quotation omitted); *see also United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007). Factors to be considered "when determining whether a defendant has established a fair and just reason for the withdrawal of a guilty plea pursuant to Rule 11(d)(2)(B) are as follows: (1) assertion of innocence, (2) prejudice to the government, (3) whether the defendant delayed filing the motion to withdraw the plea, (4) inconvenience to the court, (5) the quality of counsel during the plea, (6) whether the plea was knowing and voluntary, and (7) waste of judicial resources." *United States v. Romero*, 360 F.3d 1248, 1253 (10th Cir. 2004); *see United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005) (en

5

banc); *see also United States v. Bynum*, 567 F.3d 1255, 1264 (10th Cir. 2009). However, "a court need not address prejudice to the government, the timing of the defendant's motion, the inconvenience to the court, or the waste of judicial resources factors 'unless the defendant establishes a fair and just reason for withdrawing his guilty plea' in the first instance." *Bynum*, 567 F.3d at 1265 (quoting *Hamilton*, 510 F.3d at 1217).

**Analysis**

The parties address each of the seven factors, and thus, the Court does likewise. In the end, however, the Court finds the Motions lack merit because Defendant has failed to establish a fair and just reason for withdrawing her guilty plea.

**1. Assertion of Innocence**

Defendant's claim of factual or legal innocence is stated in her affidavit as follows:

> I never thought what I was doing was illegal. At all times, I thought everything I did was legal, that the contracts were proper and legal because they had been drafted by the attorney for the lenders and/or that the lender used contracts that were written to meet guidelines for lending companies, and also that everything was legal because I had sold a house for an attorney and he said everything was legal.

*See* Trina Tahir Aff. [Doc. No. 271-1] ¶ 3.

In contrast, Defendant stated in her plea petition under penalty of perjury that she entered into the plea agreement with the government because she "want[ed] to accept responsibility and plead guilty for [her] actions" and that her sole reason for pleading guilty was the fact that she is guilty of the offense charged in Count 12. *See* Petition to Enter Plea of Guilty [Doc. No. 94] (hereafter, "Plea Petition") at 9, ¶¶ 40(c), 44. She confirmed under oath during the change-of-plea hearing that she was pleading guilty because she was "in fact, guilty." *See* 4/6/11 Hr'g Tr. [Doc. No. 201-2] (hereafter, "Hr'g Tr.") at 17:15-17. Defendant signed a factual statement admitting she

6

facilitated a fraudulent mortgage transaction by loaning Mr. Gipson money for a down payment and receiving the money back after the loan was funded. *See* Plea Petition at 10, ¶ 49. When questioned about this statement during the hearing, Defendant testified unequivocally under oath that she was asked to, and did, give money to a third party in the amount needed for Mr. Gipson's down payment in a residential mortgage transaction, knowing that Mr. Gipson would use the money as if it were his own, that the lender would receive false information about whether the down payment was borrowed, and that an interstate wire transfer would be used to fund the loan. *See* Hr'g Tr. at 13:18-15:15, 16:12-25. Defendant also testified that after the loan was funded, she received from the third party the amount of money she had loaned Mr. Gipson and deposited it into her bank account, disguising the fact that it was reimbursement for the down payment she had loaned Mr. Gipson. *Id*. at 15:16-16:7, 17:1-4. Defendant expressly admitted that when depositing the third party's check, she "knew that it was the proceeds of unlawful activity." *Id*. at 16:8-11.

In light of this clear and specific testimony, the Court finds Defendant's conclusory assertion of innocence to be insufficient to overcome her prior sworn statements and plea of guilty to the money laundering offense charged in Count 12. Her alleged reasons for believing her conduct was "legal" – quoted in full *supra* – have nothing to do with the transaction to which she pled guilty. To the extent Defendant's statement suggests an advice-of-counsel defense, Ms. Davis testified that an investigation revealed Defendant's account was not necessarily true, and Mr. Jones testified that Defendant simply held an incorrect view of real estate law. Although Mr. Jones expressed concern in his original affidavit about Defendant's mental state and ability to form the specific intent to commit the offenses charged in the Indictment, this concern arose in the context of a challenge to Defendant's mental competency, which has been now decided adversely to her. Thus, although Defendant may have generally asserted her innocence, this assertion is not dispositive. A defendant

7

"is not entitled to withdraw his plea simply because he possesses a non-frivolous defense theory." *United States v. Garcia*, 577 F.3d 1271, 1274 (10th Cir. 2009). Under the circumstances, the Court finds the first factor weighs against a finding of a fair and just reason for withdrawal of Defendant's guilty plea.

### 2. Prejudice to the Government

The Indictment charges Defendant with committing nine federal offenses, and a trial of the charges would require proof of a complicated conspiracy involving multiple participants and numerous financial transactions. The government has already tried the conspiracy charge once and, if it could reconstruct the case used to convict Mr. Smith of conspiracy (and to prove other charges of the Indictment), doing so would require a duplication of prosecutorial resources and would unfairly disadvantage the government. Mr. Gipson would have little incentive to cooperate a second time after he has served his prison sentence. Therefore, the Court finds that the government would be prejudiced by allowing Defendant to withdraw her guilty plea, and this factor weighs against Defendant.

### 3. Defendant's Delay in Filing the Motion

Defendant first asked the Court to permit the withdrawal of her guilty plea more than seven months after she entered it and more than four months after the initial disclosure of the presentence investigation report. Defendant's apparent explanation of the delay is, in part, that she was in a constant state of over-medication and confusion until she saw the recommended guideline range in the final presentence report. Further, Defendant first made allegations against her original attorneys over two years after her plea, following an unsuccessful effort to void the guilty plea based on mental incompetency. Defendant faults her counsel for this delay. However, the Court easily finds

from the sequence of events, the substance of communications between Defendant and her attorneys, and facts shown by the case record, that Defendant's requests to withdraw her plea are prompted by dissatisfaction with the presentence report regarding the advisory guideline range for a prison sentence, and not by any mental confusion or coercion by her counsel. The evidence shows that Defendant has manipulated and purposely delayed these proceedings.[2] Thus, the Court finds Defendant's delay in filing the Motions weighs against a finding of a fair and just reason to withdraw her guilty plea.

4. **Inconvenience to the Court**

Assuming the length of time needed to try the government's case against Defendant would be similar to the case against Mr. Smith, approximately one week would be needed for a jury trial of Defendant under the Indictment. The Speedy Trial Act would require the trial to commence within seventy days from the date of an order permitting withdrawal of the plea. *See* 18 U.S.C. § 3161(i). The Court already has an established trial schedule throughout that time period, including a one-week trial in another criminal case. The rescheduling of other matters to create an adequate period of time for pretrial preparation and trial proceedings in this case would be a significant inconvenience. This factor, including disruption of the Court's docket and delays in other pending matters, weighs against Defendant. *See United States v. Carr*, 80 F.3d 413, 420-21 (10th Cir. 1996).

---

[2] Defendant's motives are well-stated in an email written on September 21, 2011, during an exchange of messages with Ms. Davis. Ms. Davis reiterated that she had repeatedly advised Defendant of the likelihood of a custodial sentence, and Ms. Davis explained the government's decision not to indict Mr. Dodson as based on a view that Defendant and her daughter were not credible witnesses. Defendant replied, in pertinent part: "I don't think you all are listening[.] I am not going to jail for 41 months and no appeal. . . . [W]e need to move on and figure out how you gone [sic] get this plea reversed." *See* Sealed Exhibits, Ex. 18 [Doc. No. 277-17]; Def.'s Reply Br., Ex. 2 [Doc. 281-2]. Ms. Davis also testified credibly at the hearing that Defendant's allegation of being promised a prison sentence of no more than six months first surfaced after the Court's competency decision and a strategy meeting in which Ms. Davis advised Defendant that one ground to withdraw a guilty plea would be coercion.

5. **Effective Assistance of Counsel**

Defendant suggests in support of her Supplemental Motion that Mr. Jones and Ms. Davis provided ineffective assistance in advising Defendant to accept the plea agreement they had negotiated on her behalf. No specific defect in performance is argued, however, other than the attorneys' alleged coercion of Defendant to plead guilty, discussed *infra*. *See* Supplemental Motion [Doc. No. 271] at 15-16.

When a defendant challenges a guilty plea based on ineffective assistance of counsel, federal courts apply the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). *See Hamilton*, 510 F.3d at 1216. "To prevail under this test, [Defendant] must show *both* (1) that counsel's performance was deficient *and* (2) that this deficiency prejudiced [her] defense.'" *Id*. (internal quotation omitted; emphasis in original). To establish that Mr. Jones' and Ms. Davis' performance was constitutionally deficient, Defendant "must show that the attorney's performance fell outside the wide range of competence demanded of attorneys in criminal cases." *Id*. (internal quotation omitted). "To demonstrate [she] suffered prejudice as a result of the alleged deficiency, [Defendant] must show that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty but would have insisted on going to trial." *Id*. (internal quotation omitted).

The Court finds that Defendant has failed to assert a substantial ineffective assistance claim. The record establishes that Defendant received careful attention and skillful representation from two experienced criminal defense attorneys. They negotiated with the prosecutor a plea agreement that limited Defendant's exposure to a lengthy prison sentence, and if she had allowed them to complete the representation, they might well have persuaded the Court to impose a lesser sentence than is

reflected in the presentence report and a prison sentence below the advisory guideline range.[3] Further, Defendant's current allegation of a performance deficiency is inconsistent with her testimony at the April 6, 2011 hearing, in which she assured the Court she was satisfied with her attorneys' services and she believed they had properly counseled and assisted her. *See* Hr'g Tr. at 17:18-23.

Defendant also makes an insufficient showing of prejudice. Even now, Defendant makes only a conclusory allegation that she would have insisted on going to trial but for counsel's advice. Until now, she had consistently and repeatedly stated she did not want to go trial in April, 2011. On the eve of her change-of-plea hearing, Mr. Jones responded to questions about the hearing by expressly counseling Defendant:

> I want to emphasize to you that you should do what you think is best. I cannot force you to do anything. I cannot enter a plea of guilty for you and I cannot guarantee you what the sentence will be. I can only tell you that in my opinion considering all the alternatives and consequences I think this is the best course for you.

*See* Sealed Exhibits, Ex. 8 [Doc. No. 277-7]. Defendant responded: "I do not even know what you are talking about[.] I am accepting the plea agreement[.] I do not want to go to trial." *See* Sealed Exhibits, Ex. 9 [Doc. No. 277-8]. The Court is unconvinced by Defendant's current allegation that she would have gone to trial if her attorneys had not pressured her to accept the plea agreement.

Therefore, the Court finds that this factor provides no basis for withdrawal of Defendant's guilty plea.

---

[3] Notably, one of Defendant's concerns, discussed *infra*, was the probation officer's assessment of a two-point enhancement for having a leader or organizer role in the offense. However, the plea agreement negotiated by counsel prevents the government from advocating for this enhancement at sentencing. *See* Plea Agreement [Doc. No. 93] at 5, § 7(4); *see also* Hr'g Tr. 11:8-10.

### 6. Knowing and Voluntary Nature of Defendant's Plea

Defendant alleges two circumstances that allegedly render her guilty plea unknowing or involuntary: 1) she was mentally impaired by prescription drug use at the time of her decision to plead guilty; and 2) she was coerced by defense counsel's conduct and promises regarding a prison sentence.

#### a. Mental Impairment

Setting aside the mental competency issue that has already been decided, the original Motion is based on the alleged facts that Defendant was over-medicating herself with prescribed medications for anxiety and depression. Defendant claims her medication usage – a combination of Cymbalta, Xanax, and Aleve – impaired her ability to comprehend and accept the plea deal, and thus prevented her from entering a knowing and voluntary guilty plea.[4] This aspect of her Motion is supported solely by a few medical records and Defendant's affidavit. Defendant's attorneys disclaim any knowledge about Mrs. Tahir's self-medication at the time of her guilty plea, although they do attest to her apparent confusion and communication difficulties. Ms. Davis testified that Defendant exhibited no sign of a problem with her decision to accept the plea until she received the presentence report; Defendant was upset by the recommended guideline range and the probation officer's assessment of a two-point enhancement for having a leader or organizer role in the offense. Similar to the Court's prior findings during the mental competency proceeding of Defendant's malingering and feigned incompetence, the Court finds that Defendant's allegation of a drug-induced mental impairment is not persuasive.

---

[4] Defendant also states in her affidavit that she combined these medications with a glass of wine on the day of her April 1, 2011 meeting with Ms. Davis. Ms. Davis's testimony confirms that Defendant admitted while completing the plea papers that she had been drinking alcohol before she arrived at the meeting. Both Ms. Davis and Ms. Spriggs testified, however, that Ms. Davis asked Defendant whether she was impaired and Defendant denied that she was.

Notably, when given the opportunity to present evidence on this issue, Defendant declined to testify, and presented no witness with personal knowledge of Defendant's medication usage. The medical records submitted under seal do not disclose a prescription for Xanax or a pharmacy record of having received Xanax before the date of Defendant's guilty plea.[5] The pharmacy record also does not support her claim of excessive use of Cymbalta; it shows only that Defendant purchased 30-capsule quantities in October and November, 2010, and 10 capsules in December, 2010. Like Xanax, Defendant's consistent usage of Cymbalta appears to have started months after she entered her guilty plea.[6] Thus, the Court finds that Defendant's claim she was mentally impaired by drug usage when she signed the plea papers and when she appeared before the Court to enter her guilty plea, is unsupported.[7]

In addition, Defendant's present allegations are contrary to her sworn testimony, and the Court's findings in accepting her guilty plea. Defendant stated under penalty of perjury in her plea petition, and under oath during the plea hearing, that she had not consumed any medication that was impairing her ability to think clearly and understand the proceedings and she did not have any prescribed medications that she was not taking as directed. *See* Plea Petition at 2, ¶ 6(a) and (b); Hr'g Tr. at 3:2-13, 8-19. The Court expressly found at the time of Defendant's guilty plea that "based on [her] answers to the questions of both court and counsel, . . . [she is] competent to enter

---

[5] The pharmacy record shows Defendant first received Xanax (alprazolam) on June 9, 2011.

[6] The pharmacy record shows Defendant began regularly purchasing Cymbalta in 90-capsule quantities on June 30, 2011.

[7] Defendant has submitted an affidavit stating that she took two doses of Cymbalta, one dose of Xanax, and three doses of Aleve (an over-the-counter, non-steroidal anti-inflamatory drug) on both April 1, 2011, and April 6, 2011. Yet on the first occasion, Defendant appeared agitated and was sweating profusely, according to Ms. Davis and Defendant's affidavit; but on the second occasion, she appeared calm to both her counsel and other persons present in the courtroom, including the undersigned. This opposite behavior under two like doses of medication is unexplained.

this plea, that it is entered voluntarily and with full understanding of the rights being given up and that there is a factual basis for [the guilty] plea." *See* Hr'g Tr. at 18:18-22. The Court finds no basis to alter those findings. *See United States v. Rollins*, 552 F.3d 739, 741-42 (8th Cir. 2009) (district court entitled to rely on defendant's assurances during plea hearing regarding medication usage).

      **b.**      **Coercion**

As to the alleged coercion exerted and promises made by Ms. Davis and Mr. Jones, the Court finds the testimony of Ms. Spriggs – the only witness who testified regarding these allegations – to be insufficient to overcome all other evidence presented on this issue.[8] The testimony of Ms. Davis and Mr. Jones was entirely believable that no such promises were made, and their testimony is supported by documentary evidence of communications between Defendant and her attorneys. The Court finds the facts to be clear that while Defendant and her attorneys discussed her possible sentence and an opportunity to assist the government in other cases, no promise of a particular custodial sentence was made to induce Defendant to accept the plea agreement and plead guilty. Ms. Spriggs was not a party to these communications, and was unaware most of them had occurred. The evidence regarding communications between Defendant and her attorneys reflect cogent discussions regarding the pros and cons of pleading guilty, candid advice from counsel in favor of accepting the plea bargain, and clear statements by the attorneys that Defendant's decision to plead guilty was entirely hers to make. In contrast, Defendant's subsequent communications with her attorneys show she became determined to find a way out of the plea agreement to avoid the prison time recommended by the presentence report.

---

[8] According to Ms. Spriggs' testimony, Ms. Davis exerted time pressure (requiring Defendant to sign the plea papers before leaving the office), made oral promises about the prison sentence (no more than 6 or perhaps 8 months), promised that Defendant could get a reduced sentence by testifying against others that the government intended to prosecute (Aaron Dodson for mortgage fraud, and Michael Gipson and Adia Powell for perjury), and ignored Defendant's statements about her innocence.

Further, the case record contradicts her current claim of coercion. Defendant stated in her plea petition that the decision to plead guilty was solely the product of her own free choice as part of a plea agreement, and not influenced by any oral promises or side agreements. *See* Plea Petition at 8-9, ¶¶ 39-42. The petition also reflects the voluntary nature of her guilty plea. *Id.* ¶ 44. More importantly, Defendant and her attorneys, Mr. Jones and Ms. Davis, personally appeared before the Court at the April 6, 2011 hearing. Defendant affirmed under oath that her plea of guilty was "made voluntarily and completely of [her] own free choice, free of any force or threats or pressures by anyone." *See* Hr'g Tr. at 9:25-10:4. Defendant and counsel were questioned about the plea agreement and Defendant's understanding of its terms, the charge in Count 12, possible punishment, and the rights waived by a guilty plea. Defendant was examined under oath by the prosecutor, Mr. Williams, and the Court. The undersigned specifically questioned Defendant about her plea petition, the plea agreement, and her understanding of the sentencing process. *See* Hr'g Tr. at 7:5-18, 8:21-9:24. Defendant testified that the plea agreement, as summarized by the government, contained the complete understanding and agreement of the parties, and that no other promises had been made to cause her to plead guilty. *See* Hr'g Tr. at 12:1-18. After carefully considering Defendant's testimony and demeanor, and her answers to the questions posed, the Court found that Defendant's guilty plea was "entered voluntarily and with full understanding of the rights being given up, and that there is a factual basis for [her] plea." *See* Hr'g Tr. at 18:20-22.

In light of these contemporaneous findings, the circumstances alleged in Defendant's Motions, and the evidence received at the November 21 hearing, the Court finds that Defendant was not misled or somehow induced to plead guilty based on promises or assurances made by her attorneys. In essence, Defendant asks the Court to disregard her sworn written statements and oral representations to the Court during the plea hearing, in favor of self-serving allegations raised for

15

the first time months or years later, after her presentence investigation report was disclosed. Defendant's current assertion that her guilty plea was involuntary and coerced is refuted by the record.

In short, the Court finds it clear that Defendant knowingly and voluntarily entered her guilty plea to Count 12, and is now engaged in calculated manipulation of the judicial process in order to avoid a decision she now regrets. Therefore, the Court finds that this factor does not weigh in Defendant's favor, and does not constitute a fair and just reason to withdraw her guilty plea.

### 7. Waste of Judicial Resources

Finally, the Court finds that a withdrawal of Defendant's guilty plea would waste judicial resources. Substantial resources would be expended to complete a jury trial of the charges in the Indictment. The Court is familiar with the strength of the government's case as a result of presiding over Mr. Smith's trial, and is convinced that the government could prove the conspiracy charged in Count 1 of the Indictment with respect to Defendant. A conviction on Count 1 would bring this case back to the same point where it now stands, and result in the same sentencing issues that led Defendant to move for withdrawal of her plea.[9] Under the circumstances presented, the Court finds that this factor weighs against a finding of a fair and just reason to withdraw Defendant's guilty plea.

### Conclusion

After careful consideration of the appropriate factors, the Court finds that Defendant has failed to justify the withdrawal of her plea of guilty to Count 12 of the Indictment, and that her Motions should be denied.

---

[9] The presentence report states, without objection, that Defendant's guideline range would remain the same regardless of dismissal of some counts because all counts of the Indictment would have been grouped.

IT IS THEREFORE ORDERED that Defendant Trina Tahir's Motion for Withdrawal of Guilty Plea [Doc. No. 201] and Supplement to Her Prior Motion for Withdrawal of Guilty Plea [Doc. No. 271] are DENIED.

IT IS SO ORDERED this 2nd day of December, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE